20164

Johnnie Mae MARTIN, Appellant, v. Robbie J. DUNLAP, Respondent.

(222 S. E. (2d) 8)

*Messrs. Garris & Garris,* of Columbia, *for Appellant,* ▉

*Messrs. Roberts, Jennings & Thomas,* of Columbia, *for Respondent,* ▉

February 3, 1976.

GREGORY, Justice:

Appellant commenced this action May 2, 1973 seeking recovery of damages, actual and punitive, as a result of an automobile accident on May 7, 1971. The jury returned

a verdict in her favor for actual damages. No post trial motions were presented to the trial judge by either party. Appellant alleges prejudicial error by the trial judge: (1) in allowing respondent to impeach her by cross-examination on a collateral matter, and (2) in permitting respondent to introduce exhibits and present testimony of a witness not disclosed pursuant to appellant's Interrogatories. We find no prejudicial error and affirm.

Interrogatories were served by appellant pursuant to Circuit Court Rule 90, July 5, 1973 and Answers were filed by respondent July 20, 1973. The Interrogatories so propounded were framed upon the questions as set forth in Rule 90 and after having first been answered were never supplemented by respondent's counsel.

Appellant charges prejudicial error in what she alleges is impermissible impeachment on a collateral issue. At a pre-trial deposition, appellant testified she had been married to her present husband fourteen years, having married him in 1959. At trial, her husband, on cross-examination by respondent's counsel, testified he had been married to appellant eight years, having married in 1967. Appellant testified on cross-examination that she married Mr. Martin in 1967. Respondent's counsel then sought to impeach appellant by publishing her inconsistent statements concerning date and duration of her marriage to Mr. Martin from the deposition which she had introduced into evidence.

While appellant's marital status is collateral to any issue in her case in chief, the credibility of a party witness is always in issue. "Considerable latitude is allowed in the cross-examination of a witness (always within the control and direction of the presiding judge) to test the accuracy of his memory, his bias, prejudice, interest, or credibility. In doing so the witness may be asked questions in reference to irrelevant matter, *or in reference to prior statements contradictory of his testimony,* or in reference to statements as to relevant matter not contradictory of his

testimony. It does not follow, however, that the witness may be impeached by contradictory witnesses to the same extent that the interrogation may be permitted." (Emphasis supplied) *State v. Thompson,* 118 S. C. 191, 110 S. E. 133, 134 (1921).

Impeachment of a witness's credibility by asking questions not relevant to the case in chief with a view of obtaining contradictory or inconsistent statements is, thus, limited to cross-examination of the witness sought to be impeached. The right does not extend to putting another witness on the stand to contradict him as to such collateral matters. This is the principal distinguishing feature in *McVey v. Whittington,* 248 S. C. 447, 151 S. E. (2d) 92 (1966), and *State v. Brock,* 130 S. C. 252, 126 S. E. 28 (1928), on which appellant relies.

It is important to note in this respect that Mr. Martin was appellant's own witness. He was not introduced by respondent. In addition, the inconsistent statements with which appellant was impeached and upon which she was cross-examined were published from a pre-trial deposition which appellant had put into evidence. As a general rule, a witness may be cross-examined as to a writing concerning which he has testified on direct examination or which he has introduced in evidence. 98 C. J. S. Witnesses § 391; See *Hansson v. General Insulation & Acoustics,* 234 S. C. 177, 107 S. E. (2d) 41 (1959).

Appellant next charges reversible error in the trial judge's permitting respondent to present the testimony of Mrs. Doris W. Hodges when her name was not listed in respondent's Answers to appellant's Interrogatories. Respondent's counsel had no knowledge of the name of the witness, Doris W. Hodges, nor the exhibits hereinafter questioned, prior to the first day of trial, March 20, 1975. Respondent's counsel met Mrs. Hodges and examined the mill records of Pacific Columbia Mills, appellant's employer, pursuant to a subpoena *duces tecum* which he had served.

While we do not think that disclosure of the mill records pertaining to appellant was required by the Interrogatories propounded under Circuit Court Rule 90 for reasons hereinafter discussed in connection with assignments of error in their admission, we do think that the rule requires disclosure of Mrs. Hodges; and if her name be not known, then her identity as well as can be described.

Circuit Court Rule 90(e), subsection 1, requires a party to "give the names and addresses of persons known to the parties or counsel to be witnesses concerning the facts of the case." Although Mrs. Hodges did not witness the accident, or even know respondent, she was subpoenaed to introduce and verify appellant's payroll records, and two physical examination reports. As such, we think that she was a witness "concerning facts of the case", and her identity should have been disclosed.

Respondent contends that she had no knowledge of the name of the witness prior to the first day of trial as an excuse for non-disclosure. If the name of the witness is not known, in a case as this, where the keeper of records is being subpoenaed with a subpoena *duces tecum,* we feel it incumbent on the party served with the Interrogatories to disclose the identity in terms used on the subpoena and when the proper name of such witness is learned, promptly transmit that name to the other party.

Appellant charges reversible error in the trial judge's not excluding the testimony of Mrs. Hodges as a sanction for violation of the duty of disclosure required under the Interrogatories. Respondent, on the other hand, urges this Court to adopt an exclusion in regard to Circuit Court Rule 90 whereby witnesses and exhibits to be used solely for impeachment are not discoverable. We are unwilling to limit our discovery by adoption of such an exclusion; and under the facts of the case at hand, we are unwilling to disturb the ruling of the trial judge in permitting Mrs. Hodges to testify.

A crucial issue for the jury, if it returned a verdict for appellant, was the amount of damages to which she would have been entitled, based not only on injuries sustained, but the length of the convalescence that was necessary before she was able to return to work.

Appellant's husband testified that his wife had gone to work in September or October following the accident that gave rise to the lawsuit. He was asked when she applied for a job after discharge from the hospital and he replied "It was around September or October, like I said."

Mrs. Martin testified she was hospitalized from May 12, 1971 until May 21, 1971 (the accident occurred on May 7, 1971). On direct examination she testified she returned to work "around September, 1971." On cross-examination she was asked if she had not testified on her deposition that she had returned to work in approximately October and she responded, "Well, it was approximately around that time."

Mrs. Martin was further asked if she had not made application to Pacific Columbia Mills for work as a spinner on June 16, 1971 and she replied that she did not recall it. She was next asked if she had filled out a medical form, and she denied it. Appellant was next asked to identify the application she submitted to the mill and this she did, giving the date of the application as being June 16, 1971. Exhibit 1, Application for Employment, was introduced into evidence over the objection of appellant's counsel.

On appellant's deposition she testified that she returned to work after leaving the hospital in May of 1971 by answering: "I went back in '71 and possibly October to Richland Mill."

Dr. Walter Kochanski, appellant's orthopedic physician, testified for appellant. On cross-examination he admitted the first indication he had that appellant had returned to work in any capacity subsequent to May 8, when he first saw her, was on December 1, 1971.

Mrs. Hodges appeared at trial pursuant to a subpoena *duces tecum* served by respondent for the purpose of refuting appellant's testimony as to when she returned to work and the extent of her injuries. In compliance with the subpoena, Mrs. Hodges produced at trial the appellant's application to work at Pacific Columbia Mills (respondent's Exhibit 1), her mill payroll records (respondent's Exhibit 5) and her physical examination reports (respondent's Exhibits 6 and 7).

The work application was used on cross to impeach appellant, and Mrs. Hodges was called to the stand to introduce and verify the payroll records and physical examination reports. The mill records were damaging to appellant's case as they showed that appellant returned to work in June (three months earlier than she was able to recall) and that she was in good physical condition in June, 1971.

It is clear that either due to a very faulty memory, or because of appellant's desire for an adequate verdict, she would have had the court and jury believe that following her discharge from the hospital on May 21, 1971, that she was unable to return to work until September or October of 1971. She did not tell her orthopedic physician, who was treating her for injuries allegedly sustained in the May 7 accident of her return in June to work until December, 1971. Because of appellant's misstatements, substantial injustice would have resulted, had Mrs. Hodges' testimony and the exhibits introduced while she was on the stand, been excluded from the jury's consideration.

The court in considering non-compliance with Rule 90 in *Laney v. Hefley*, 262 S. C. 54, 202 S. E. (2d) 12 (1975), and in *Jackson v. H & S Oil Co.*, 263 S. C. 407, 211 S. E. (2d) 223 (1975), has held that the impositions of sanctions, if any, for an alleged non-compliance with the rule is left within the discretion of the trial judge. Rule 90 is designed to promote decisions on the

merits after a full and fair hearing and "the sanction of exclusion of a witness should never be lightly invoked." *Jackson, supra,* at 225.

In *Laney, supra,* the court pointed out that the fact the opposing party has independent knowledge of the existence of such witness prior to the trial is a major consideration in determination of whether to exclude such unrevealed witness. Appellant, better than anyone, knew of the existence of her records at the mill where she worked, and her attorney could have known with due diligence. This is not a case where only one party had knowledge of the witness and exhibits and sought to hide such knowledge. Rather, it is a case where the witness and exhibits were known, or should have been known to both appellant and her counsel.

The trial judge did not excuse the jury to ascertain the nature of Mrs. Hodges' testimony before making his decision to admit it. While he did not follow the procedures for the examination of such witnesses out of the presence of the jury which we set forth in *Laney, supra,* his error in the circumstances of the instant case was harmless.

The dual purpose of the Interrogatories is to promote out-of-court settlements by having both sides "lay their cards on the table", and in the case of trial, to promote decisions on the merits after a full hearing. We do not look with favor on respondent's violation of the rule as she by-passed an opportunity for an out-of-court settlement which may have well resulted from pre-trial disclosure to appellant's counsel of the witness that was being subpoenaed with a subpoena *duces tecum.*

The opportunity for pre-trial settlement was moot; and the trial judge, by admitting the witness and exhibits, made possible a decision based on full disclosure of the facts. To have sanctioned respondent's violation of the rule by excluding Mrs. Hodges would have

perverted the very purpose of the rule by withholding the truth.

Circuit Court Rule 90 requires disclosure of "prepared documents *in possession of the party* (emphasis supplied) that relate to the claim or defense in the case." Mrs. Doris W. Hodges, appearing pursuant to the subpoena *duces tecum* served by respondent, produced appellant's application for employment (respondent's Exhibit 1), the mill's payroll records (Exhibit 5), and appellant's initial examination report (Exhibit 6). The aforementioned exhibits were the property of and in the custody of appellant's employer, Pacific Columbia Mills, which prepared them in the normal course of its business. They were not in the respondent's possession.

Appellant, more than anyone, was aware of the existence of her own employment application, physical examination report, and payroll records. They were more accessible to her than to respondent. There is no evidence that respondent utilized the subpoena *duces tecum* to circumvent disclosure required by Circuit Court Rule 90. Under these circumstances, there was no violation by respondent of her duty of disclosure as to the aforementioned exhibits and appellant's argument for their exclusion predicated upon respondent's violation is, thus, without merit.

Since the jury found in appellant's favor, the only inference to be drawn from this appeal is that she regards the verdict as inadequate. No post trial motions were made by her for a new trial absolute or *nisi* on this ground.

Accordingly, her exceptions are overruled, and the lower court is,

Affirmed.

LEWIS, C. J. LITTLEJOHN and NESS, JJ., and JOSEPH R. Moss, Acting Associate Justice, concur.