# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

The State, Respondent,

v.

Brandon Jerome Clark, Petitioner.

Appellate Case No. 2023-000641

---

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

---

Appeal from Pickens County
Donald B. Hocker, Circuit Court Judge

---

Opinion No. 28246
Heard October 30, 2024 – Filed December 18, 2024

---

## REVERSED AND REMANDED

---

Cameron Jane Blazer, of Charleston, for Petitioner.

Attorney General Alan McCrory Wilson and Assistant Attorney General Ambree Michele Muller, both of Columbia; and Solicitor William Walter Wilkins III, of Greenville, all for Respondent.

---

**CHIEF JUSTICE KITTREDGE:** This appeal requires the Court to determine the constitutional contours of a defendant's cross-examination of a forensic interviewer

in a criminal sexual conduct (CSC) with a minor case.  It is settled that the State may not, directly or indirectly, bolster the credibility of an alleged child victim through the evidence presented by a forensic examiner pursuant to section 17-23-175 of the South Carolina Code (2014) or otherwise.  Here, Petitioner sought *not* to bolster the alleged victim's testimony but to attack the credibility of the minor by challenging the methods and techniques of the forensic interviewer.  Believing this Court's case law preventing the State from vouching for the credibility of the alleged minor victim applied with equal force to an accused, the State objected to much of Petitioner's desired cross-examination of the forensic interviewer.  The trial court sustained the State's objection.  As we will explain, this was error, for an accused's right of confrontation to challenge the evidence and credibility of the State's case is foundational and constitutional.

A jury convicted Petitioner Brandon Clark of first-degree CSC with a minor.  At trial, Petitioner sought to cross-examine the State's forensic interviewer regarding the particular interview techniques she employed during her interview of the alleged victim.  Following an in-camera hearing, the trial court prohibited Petitioner from doing so.  Petitioner appealed, and the court of appeals affirmed, holding this Court's decisions in *State v. Anderson*[1] and *State v. Kromah*[2] foreclosed Petitioner's intended cross-examination of the State's forensic interviewer concerning techniques.  *State v. Clark*, 438 S.C. 495, 884 S.E.2d 212 (Ct. App. 2023).  We granted Petitioner a writ of certiorari and now reverse.

*Anderson* and *Kromah* in no manner address the right of an accused to challenge the State's evidence, including the accused's ability to confront the credibility of the State's witnesses.  Succinctly stated, as applied to this case, an accused is not categorically precluded from questioning a forensic interviewer regarding the techniques he or she employed in an interview of an alleged child victim.  While *Anderson* and *Kromah* prevent *the State* from eliciting *direct*-examination testimony with respect to techniques, they do not prohibit such testimony elicited on *cross*-examination by a *defendant*.  To hold otherwise would inhibit a defendant's ability to defend himself at trial and offend his or her Sixth Amendment right of

---

[1] 413 S.C. 212, 776 S.E.2d 76 (2015).

[2] 401 S.C. 340, 737 S.E.2d 490 (2013).

confrontation. We therefore reverse the court of appeals' decision and remand for a new trial.

## I.

## A.

In March 2017, A.G.—who was five years old at the time—reported to her father that she had been sexually abused by Petitioner, her mother's boyfriend. Later that month, A.G. went to a child advocacy and rape crisis center for a recorded forensic interview about the alleged sexual abuse. Forensic interviewer Amber Hiott Cheney conducted the interview. During the roughly forty-minute interview, A.G. provided Cheney details of the alleged abuse. As a result of A.G.'s disclosures, Petitioner was charged with first-degree CSC with a minor.

## B.

Petitioner proceeded to a jury trial in August 2019. At a pretrial hearing, the State sought to admit the recorded forensic interview into evidence. Petitioner consented to the video's admission, and the trial court ruled it was admissible because the court found the requirements of section 17-23-175 were satisfied. At trial, the State called forensic interviewer Cheney to testify. Upon authentication, the video recording of the interview was admitted into evidence.

As Petitioner began to cross-examine Cheney, the State immediately objected, asserting the scope of the cross-examination exceeded that which was permissible under *Anderson* and *Kromah*. The jury was excused, and Petitioner proffered his cross-examination in camera, which revealed that his defense strategy was to show Cheney had used suggestive interview techniques during A.G.'s interview that resulted in false or otherwise inaccurate accusations.

Following the proffer, the State argued that *Anderson* categorically prohibited any testimony from a forensic interviewer concerning interview techniques. Petitioner disagreed, countering that *Anderson* proscribed only the State's direct examination—not a defendant's cross-examination—as to such matters. Petitioner explained that his proposed cross-examination would not implicate the issue *Anderson* sought to avoid: improper bolstering of the child victim's testimony. Rather, he attempted to demonstrate that "the technique that was used [in the interview] may have influenced

[A.G.'s answers]." The trial court ultimately agreed with the State and limited Petitioner's cross-examination of Cheney with respect to the methods and techniques she used in her interview of A.G.

At the close of trial, the jury found Petitioner guilty as charged, and the trial court sentenced Petitioner to twenty-five years in prison.

## C.

Petitioner appealed his conviction to the court of appeals, arguing, in relevant part, that the trial court erred in limiting his cross-examination of Cheney. In support of his argument, Petitioner asserted *Anderson* and *Kromah* did not preclude his intended cross-examination because he was not seeking Cheney's opinion on A.G.'s truthfulness. Instead, according to Petitioner, he intended to highlight the ways in which Cheney's interview techniques, such as the alleged use of leading questions, may have influenced A.G.'s responses during the interview.

The court of appeals affirmed Petitioner's conviction, holding the trial court properly restricted Petitioner's cross-examination of Cheney. The court reasoned that section 17-23-175 contemplates challenges to the forensic interviewer's techniques being vetted in front of the judge alone, not in front of the jury. Further, the court read *Anderson* to foreclose Petitioner's intended cross-examination given the purpose of *Anderson*'s limitation on forensic interviewers' testimony, explaining "[I]f [Petitioner] can attack method and training, the State must necessarily dispute [his] viewpoint, and it is difficult to envision how the State could dispute the attack *without* bolstering [the child victim's testimony]."

We granted Petitioner a writ of certiorari to review the court of appeals' decision.

## II.

"The scope of cross-examination is within the discretion of the trial judge, whose decision will not be reversed on appeal absent a showing of prejudice." *See State v. Colf*, 337 S.C. 622, 625, 525 S.E.2d 246, 247–48 (2000). "An abuse of discretion occurs when the conclusions of the trial court either lack evidentiary support or are controlled by an error of law." *State v. Douglas*, 369 S.C. 424, 429–30, 632 S.E.2d 845, 848 (2006).

## III.

## A.

Petitioner argues the court of appeals erred in concluding the trial court properly restricted his cross-examination of Cheney concerning the techniques she employed in her interview of A.G. We agree.

Section 17-23-175 sets forth the criteria for admitting out-of-court statements of children under the age of twelve, including those captured on video. Specifically, the statute provides that such a statement is "admissible if . . . the [trial] court finds, in a hearing conducted outside the presence of the jury, that the totality of the circumstances surrounding the making of the statement provides particularized guarantees of trustworthiness."[3] S.C. Code Ann. § 17-23-175(A)(4). The statute further offers a non-exhaustive list of factors trial courts may consider in determining whether the circumstances surrounding the giving of the statement possess "particularized guarantees of trustworthiness," including, among others, whether the child's statement was elicited by leading questions. *Id.* § 17-23-175(B). If the trial court determines the circumstances of the alleged child victim's statement presented in a recording satisfy "particularized guarantees of trustworthiness," the court may then admit the video into evidence.

In the past, the State's method of examining the forensic interviewer tended to impermissibly bolster the child victim's credibility.[4] *See, e.g., Smith v. State*, 386

---

[3] The statute sets forth additional requirements for the admission of such statements. *See* S.C. Code Ann. § 17-23-175(A)(1)–(3). Petitioner does not challenge those additional requirements.

[4] *See State v. Jennings*, 394 S.C. 473, 480, 716 S.E.2d 91, 94 (2011) ("For an expert to comment on the veracity of a child's accusations of sexual abuse is improper."); Rule 608(a), SCRE (providing that opinion evidence regarding credibility "may refer only to character for truthfulness or untruthfulness," and "*evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked* by opinion or reputation evidence or otherwise" (emphasis added)); *State v. Morales*, 439 S.C. 600, 606 n.1, 889 S.E.2d 551, 555 n.1 (2023) (explaining that the principles of law prohibiting improper bolstering are incorporated into Rule 608(a), SCRE).

S.C. 562, 564, 569, 689 S.E.2d 629, 631, 633 (2010) (finding a forensic interviewer's opinion testimony improperly bolstered the victim's credibility when the forensic interviewer, at the State's invitation, testified that she found the victim's statement "believable" and stated the victim had no reason "not to be truthful"). Therefore, we set forth a range of prohibited and acceptable statements for such interviewers testifying at trial. *See Kromah*, 401 S.C. at 360, 737 S.E.2d at 500 (prohibiting forensic interviewers from testifying "the child was told to be truthful" or from providing "an opinion that the child's behavior indicated the child was telling the truth"; but permitting interviewers to discuss the circumstances of the interview, personal observations of the child, and events within the interviewers' personal knowledge).

Subsequently, we clarified the procedure trial courts are to follow when the State seeks to admit a recorded forensic interview:

> First, the statute requires that the interviewer be called to testify in camera. At that in camera hearing, the interviewer must testify to establish the types of factors set forth in § 17-23-175(B), such as her training and background, whether she utilized the RATAC procedure or the ChildFirst protocol, as well as any other testimony that will assist the trial court in determining whether the child's statement possesses the "particularized guarantees of trustworthiness" and thus the admissibility of the video. Assuming the court determines that the interview is admissible under the statute, the forensic interviewer will be called to testify before the jury.

*Anderson*, 413 S.C. at 220, 776 S.E.2d at 80 (emphasis and citations omitted). Furthermore, taking the guidance provided in *Kromah* a step further, we specified the appropriate scope of testimony for forensic interviewers. Specifically, to reduce the prejudice flowing from the use of a forensic interviewer as a "human lie-detector" to the jury, we explained:

> *The sole purpose of [a forensic interviewer's] jury testimony is to lay the foundation for the introduction of the videotape, and the questioning must be limited to that subject. **There is to be no testimony to such things as techniques**,* of the instruction to the interview subject of the importance of telling the truth, or that the purpose of the interview is to allow law enforcement to determine whether a criminal investigation is warranted. *This type of testimony . . . necessarily*

*conveys to the jury that the interviewer and law enforcement believe the victim* and that their beliefs led to the defendant's arrest, these charges, and this trial, thus impermissibly bolstering the minor's credibility. *We hold none of the evidence necessary for the trial court's determination of "whether a statement possesses particularized guarantees of trustworthiness" and thus [is] admissible under § 17-23-175(A)(4) and (B) is to be presented to the jury, as such evidence necessarily vouches for the credibility of the alleged victim.*

*Id.* at 220–21, 776 S.E.2d at 80 (emphasis added).

## B.

The trial court and the court of appeals read the italicized language from *Anderson* above as imposing a categorical rule against testimony from a forensic interviewer concerning the techniques used in an interview with an alleged child victim, including such testimony elicited via cross-examination. This reading is incorrect, for it overlooks the context giving rise to that language and reflects a mistaken view that the bolstering concern applies with equal force in the typical cross-examination.

As noted at the outset, *Kromah* and *Anderson* do not set forth a blanket prohibition on all parties of all testimony from a forensic interviewer regarding the techniques he or she employed in an interview of an alleged child victim. Rather, those decisions bar *the State* from eliciting such *direct*-examination testimony, for such testimony would serve chiefly to improperly bolster the credibility of the child witness. Neither case involved or implicated a defendant's right to cross-examine a forensic interviewer.

It is true, and Petitioner readily acknowledges, that a defendant cross-examining a forensic interviewer's methods or techniques may "open the door" for the State on re-direct examination. That prospect, however, is no reason to categorically deny a defendant the opportunity for such cross-examination. Petitioner concedes that if a defendant elects to attack the interviewer's techniques on cross-examination, then depending on the precise inquiry, he or she may thereby open the door to the State rebutting that attack with evidence that ultimately strengthens the alleged child victim's testimony.[5] Although a risky option for a defendant to choose, the decision

---

[5] The question of whether a defendant's cross-examination as to a forensic interviewer's techniques has opened the door to the State's re-direct examination as

to do so is for the defendant alone to make.[6]

Accordingly, we conclude the court of appeals erred in affirming the trial court's reading of *Kromah* and *Anderson* to prohibit Petitioner's cross-examination of Cheney as to the techniques she used in her interview of A.G.[7]

---

to the same will require a case-specific analysis.  We are confident our able trial court judges will carefully evaluate the precise inquiry on cross-examination in a particular case to determine whether the defendant has opened the door to the State's rebuttal as to techniques.

[6] We additionally note that the portion of the court of appeals' decision addressing this issue conflates the concepts of admissibility and credibility.  While it is true that section 17-23-175 and *Anderson* obligate the trial court to determine whether the circumstances surrounding the child's statement are reliable, that inquiry goes towards the admissibility of the recording, not the credibility of the accusations contained therein.  *Cf. State v. Miller*, 441 S.C. 106, 119 n.10, 893 S.E.2d 306, 313 n.10 (2023) ("Because questions of credibility, whether of a witness or of a confession, are for the jury, the requirement that the court make a pretrial voluntariness determination does not undercut the defendant's traditional prerogative to challenge the confession's reliability during the course of the trial. . . .  Evidence about the manner in which a confession was obtained is often highly relevant as to its reliability and credibility." (cleaned up) (quoting *Crane v. Kentucky*, 476 U.S. 683, 688, 691 (1986))).  A judge's determination as to admissibility is not—and cannot be—the final word on credibility, for that judgment is exclusively within the province of the jury.  *Kromah*, 401 S.C. at 358, 737 S.E.2d at 500 ("The assessment of witness credibility is within the exclusive province of the jury." (cleaned up)).

[7] In its brief to this Court, the State argued the proper interpretation of *Kromah* and *Anderson* was that espoused by the trial court and court of appeals: all questioning regarding forensic interview techniques was prohibited for all parties.  However, when pressed during oral argument, the State abandoned its initial reading of the cases and instead advocated for us to find the trial court's decision was a proper exercise of its broad discretion to determine the permissible scope of cross-examination.  *See generally Colf*, 337 S.C. at 625, 525 S.E.2d at 247–48 ("The scope of cross-examination is within the discretion of the trial judge . . . .").  We find this argument unavailing as well, for as explained above, the trial court's decision was

## C.

We finally address the constitutional right at stake in this case: the Sixth Amendment right of confrontation. *See generally* U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ."). Petitioner asserts that the trial court's ruling violated his right of confrontation. We agree.

"The constitutional right to confront and cross examine witnesses is essential to a fair trial in that it promotes reliability in criminal trials and [ensures] that convictions will not result from testimony of individuals who cannot be challenged at trial." *State v. Martin*, 292 S.C. 437, 439, 357 S.E.2d 21, 22 (1987). "Indeed, the opponent's opportunity for cross-examination has been deemed the 'main and essential purpose of confrontation.'" *State v. Stokes*, 381 S.C. 390, 402, 673 S.E.2d 434, 440 (2009) (citation omitted). "Thus, it is the *opportunity* to cross-examine that is constitutionally protected." *Id.* Accordingly, the trial court's decision to deny Petitioner the opportunity to cross-examine Cheney with respect to the techniques she employed in her interview with A.G. indisputably violated his Sixth Amendment right of confrontation.

In cases involving CSC with a minor, the child's forensic interview is often significant evidence against the defendant. The recording of that interview provides the jury with the child's allegations, in the child's words. Although the child also testifies and is subject to cross-examination at trial, the years between the child's initial disclosure and trial often render the initial disclosure to the forensic interviewer critical evidence. As a result, the State must often rely heavily upon the child victim's disclosures to the forensic interviewer to establish its case against the defendant. Denying a defendant in these cases the *opportunity* to challenge that evidence—to attack the circumstances of his accuser's allegations—unconstitutionally impairs his ability to defend himself.

Therefore, we find Petitioner's constitutional right of confrontation was violated when he was deprived of any opportunity to cross-examine Cheney as to the methods and techniques she utilized in her interview of A.G.

---

based upon a misreading of the law set forth in *Kromah* and *Anderson*.

## IV.

To conclude, we hold the court of appeals erred in affirming the trial court's decision to prevent Petitioner's cross-examination of Cheney with respect to the methods and techniques she used in her interview of A.G.  For that reason, we reverse the court of appeals' decision and remand the matter for a new trial.[8]

**REVERSED AND REMANDED.**

**FEW, JAMES, JJ., Acting Justices Charles B. Simmons and Debra Ruilova McCaslin, concur.**

---

[8] Because we find the cross-examination issue dispositive, we need not address Petitioner's remaining arguments.